# EXHIBIT A



# STANFORD INTERNATIONAL BANK LTD.
## *in liquidation*

.ER UNA COPIA DE ESTA
. ESPANOL DE
.antisplc.com/Stanford

.NT KEEP YOUR CLAIM ID SAFE AS YOU
.ILL NEED IT TO REGISTER YOUR CLAIM
Claim ID: AAAA-BBBB-CCCC-DDDD

Mailing Address

May 13, 2009

Dear Sir/Madam

**Stanford International Bank Limited (In Liquidation)("the Bank")("SIB")**

We write to advise that on April 15, 2009 by order of The High Court of Justice of Antigua and Barbuda that Nigel Hamilton-Smith and Peter Wastell have now been appointed Liquidators of SIB on April 15, 2009. Their appointment as Liquidators follows their appointment as Receiver-Managers on February 19, 2009 by the Financial Services Regulatory Commission ("FSRC") of Antigua and Barbuda and by further order of The High Court of Justice of Antigua and Barbuda on February 26, 2009.

The decision to appoint Receiver-Managers arose because of the restraining order obtained by the Securities and Exchange Commission ("SEC") in the United States of America ("United States") which meant that SIB no longer had access to its bank accounts (which were held in a number of countries including Canada, Switzerland, the United Kingdom, Panama and the United States) to continue its operations. Separately SIB was in receipt of significant volumes of e-mails, telephone calls and personal visits from depositors seeking confirmation that their investments were safe and, in many instances, seeking the withdrawal of their funds which could not be processed.

As proposed in my letter to depositors of March 2, 2009 we now set out our initial findings in relation to the actions that we have taken both as Receiver-Managers and Liquidators, and our initial views on the financial position of SIB.

**Actions Immediately Upon Appointment**

On Friday February 20, 2009 we attended the headquarters of SIB at St John's, Antigua to meet with the management and staff and to also deal with investors who had decided to travel to the Bank's headquarters either to withdraw their investments or seek clarity on the status of their funds.

Meetings were held with the 87 staff to advise of the Receiver-Managers appointment and to explain that our primary focus would be to:

1. Protect the position of depositors who were located around the world;
2. Confirm the sums owed to depositors;
3. Deal with staff concerns and seek funding for payment of staff salaries whilst they remained employed by SIB in receivership;
4. Seek to establish the position with the investment assets held by SIB;
5. Establish the position with the non investment assets held by SIB;
6. Engage with Mr Janvey the US Receiver, the SEC and the US Court; and
7. Ensure the preservation of the operating infrastructure and IT systems used by SIB.

No. 11 Pavilion Drive, P.O. Box 3300 • St. John's, Antigua, West Indies
(268) 480-3700 • (268) 480-3737 Fax

**Work Undertaken to Assist Investors**

As expected, the current position with SIB and the freezing of all accounts has been a matter of the highest concern for the Bank's depositors who total in excess of 27,000. Significant efforts have therefore been made to put in place appropriate arrangements to ensure communication with depositors and our efforts have included:

1. Notifying depositors of our appointment by way of a world-wide press release with additional press releases being issued on a regular basis as matters have developed;
2. Ensuring details of our appointment have been provided on our website www.vantisplc.com;
3. Re-opening the Bank's telephone lines to deal with depositor enquiries and for depositors to be provided with FAQ's sheets in both English and Spanish as required;
4. Dealing with over 15,000 e mail communications from depositors;
5. Opening e-mail communication channels for depositors including the ability to provide instructions for change of address and change of mailing instructions. To date over 5,000 change of address and mail instructions have been processed;
6. Ensuring statements of account were produced for investors, detailing investment balances as at February 19, 2009. This gave rise to significant issues having to be addressed due to the need to undertake a mid-month statement run (had we waited until month end the Bank's IT system would have continued to calculate interest due on balances). We also had to deal with 12 postal and courier companies who initially refused to provide any services to SIB due to outstanding amounts being owed by SIB for services prior to the receivership. Having resolved the IT and logistical problems it was possible to issue statements to all clients who would normally receive statements.

**SIB's Activities Prior to Receivership**

SIB was engaged in the taking of deposits from clients and then investing those monies on behalf of the depositors. The products offered by SIB appear to be limited to the following:

- Fixed term deposits known as Fixed Certificates of Deposit ("FixedCD") with terms ranging from 3 months to 60 months. The longer the term of the deposit the higher the interest rate offered. Clients could invest in multiple currencies including US Dollars, Euros, Canadian Dollars and Sterling;
- Flexible term deposits known as Flexible Certificates of Deposit ("FlexCD") with terms ranging from 3 months to 60 months but with permitted withdrawals during the term. Again interest rates were linked to the term of the deposit and clients could invest in multiple currencies;
- Index Linked Certificates of Deposit ("ILCD") – where growth of the ILCD was linked to the performance of certain equity markets but with certain minimum guaranteed returns being offered to investors;
- Express A/c – 24 hour call account;
- Performance A/c – 15 day call account;
- Premium A/c – 15 day call account where client liability is matched by treasury bills;
- Private Banking services including the issuance of SIB credit cards (via Visa and Mastercard) and managing bill payments on behalf of clients.

Clients could also borrow monies from SIB against their deposits. We are advised that typically the client's monies would be invested on a long term basis with loans taken on a short term basis on which SIB made a margin on the interest charged. The Bank records indicate that it had loaned an amount of US$100 million to clients against the security of their CD's at the date of receivership.

The records of SIB indicate that as of February 19, 2009 the Bank had 27,992 active clients. Including accrued interest to February 19, 2009 the Bank's records indicate a total of US$7.2 billion is owed to depositors.

SIB's clients were from around the world. It is noted that there are clients based in 113 different countries.

The Bank's head office was located at No 11. Pavillion Drive, St John's, Antigua. In addition to the head office the Bank also had a representative office in Montreal, Canada. SIB had no other trading locations.

## ASSET IDENTIFICATION WORK

As late as December 2008 the Bank's marketing literature provided to clients detailed that the Bank's assets were in excess of sums owing to depositors and that the Bank was therefore solvent. Since our appointment we have been seeking to confirm the true value of the Bank's assets.

Assets identified include:

### Cash Balances

Our investigations have established that as of close of business on Wednesday, February 18, 2009 SIB's records detailed the cash balances being held of US$46 million with monies being held in Antigua, Canada, United Kingdom and the United States.

### Investment Assets

We have located significant amounts of paperwork detailing accounts with financial institutions and corporations where it would appear that SIB had invested monies. Assets held with financial institutions include equities, bonds, private equity investments and cash. From the documents located we have been able to identify assets with a maximum value of US$472 million although we have serious concerns that current values may be significantly less when the values of assets held by each financial institution is confirmed.

We have also located monthly reporting schedules from Stanford Group Company the latest being December 31, 2008 showing 17 different equity investments managed on behalf of SIB totalling US$365 million and loans to 7 companies of a further US$105 million. We believe that these values are likely to have been significantly inflated and the true value will be significantly lower.

At this time it is not possible for us to accurately confirm the true value of the investment assets identified for a number of reasons including:

1. SIB not being in receipt of current statements from financial institutions detailed as holding funds. We have however located significant paperwork detailing that SIB was providing high volumes of sell orders on their investment portfolios to these organisations during January and February 2009 which we understand was to generate cash to meet client redemption requests which had been increasing steadily since October 2008 when the worldwide financial crisis gathered momentum. It is likely that due to the withdrawals made and the decline in worldwide equity markets, that values may have further diminished.

2. Refusal by Swiss financial institutions to release information without an order of the Swiss Court. The Liquidators have made the required applications to the Swiss Court to obtain full disclosure of assets held on behalf of SIB.

3. A number of the investments being made in privately held entities where it is not possible to access public data and for which responses are awaited.

In addition to external organisations we have also sought confirmation of balances held with other Stanford entities. The last return submitted to the FSRC in September 2008 detailed that other Stanford entities held in excess of US$4 billion on behalf of SIB. Initial responses received from the US Receiver indicate that they have been unable to confirm any monies being held on behalf of SIB.

**Non investment assets**

We have undertaken a review of the balance sheet of SIB which has identified a number of additional assets including:

- The freehold property at 1000 Airport Boulevard, Coolidge, St John's, Antigua which is occupied by Bank of Antigua;

- A further 3 small parcels of land in Antigua;

- Office furniture and IT equipment within the Bank's head office at No.11 Pavillion Drive, St John's, Antigua, the office furniture and IT equipment in Montreal, Canada; and

- A number of motor vehicles.

The overall value of these assets within SIB's accounts is detailed at US$6.2 million. We are aware that the property assets are subject to the terms of section 3 of the Land Acquisition Act Cap.233 of Antigua and Barbuda and in due course it will be either necessary to agree the value to be paid by the Antiguan Government for the land they seek to acquire or reach agreement that the land and property assets can be sold on the open market for the benefit of SIB's creditors.

**Shareholder Capital Injection November 2008**

During November 2008, SIB was advised that Allen Stanford the sole shareholder of SIB had invested US$541 million by way of share capital to provide further support to SIB's balance sheet. To date we have not been able to establish that any monies were invested by Allen Stanford. It would however appear that certain private equity investments and land assets in Antigua were deemed to be part of the US$541 million and our investigations continue to confirm the true position. Our initial findings are that the land assets in question had an acquisition cost of around US$800 million.

**Asset Tracing**

Whilst our investigations are at a formative stage we consider that SIB will have significant claims against other Stanford entities. By way of example we have located records which detail that Allen Stanford had invested over US$500 million in other Antiguan corporations (including Sticky Wicket Ltd, Stanford Development Company Ltd, The Pavillion Restaurant Ltd, Antigua Athletic Club Ltd, Sun Printing Publishing Ltd, Stanford Aviation Ltd) and we consider that the funds for such investments are likely to have been provided by SIB although the monies are likely to have passed through a number of Stanford entities prior to investment and therefore complicated tracing claims will need to be undertaken.

In addition SIB also paid in excess of US$656 million in management fees to other Stanford entities between 1998 and 2008.

At present we therefore summarize our current estimate of the maximum value of the Bank's assets as follows:

- Cash assets – US$46 million
- Assets held by financial institutions – US$472 million
- Sums invested / loaned to corporations – US$470 million
- Tracing claims – uncertain

Total asset values could therefore be below US$1 billion against depositor liabilities of US$7.2 billion.

At this time it has not been possible to fully explain the very significant shortfall of the Bank's assets against its liabilities. At present it would appear that the position of SIB would indicate that a Ponzi scheme (being a scheme where the Bank's ability to continue to trade and offer high rates of return are driven by its ability to attract new depositors whose monies are used to meet future liabilities and redemptions) had been in operation although further work will have to be carried out over the forthcoming months to properly establish the reasons for SIB's failure and lack of assets. We are aware of the significant speculation on further proceedings being brought in the United States against Allen Stanford, James Davis and Laura Pendergest-Holt, a matter which we continue to monitor.

**US Receiver Communications**

At the outset of the receivership we recognised at an early stage that it would be beneficial to work with the US Receiver, the SEC and the US Court in seeking to identify the assets of SIB and maximise the outcome for the depositors of SIB.

Whilst discussions continue with the US Receiver, to date it has not been possible to reach agreement for formal and appropriate co-operation. In this respect a fundamental difference is our conclusion that the Centre of Main Interest ("COMI") for SIB is Antigua and the US Receiver's belief that it is the United States. The decision on where COMI rests is important in the recovery and distribution of the assets of SIB. As part of our role in recovering the assets of SIB we have issued COMI recognition applications in the United Kingdom, Switzerland, Canada and the United States. Those applications have been challenged by the US Receiver. We do not propose to make further comment on these applications pending the decisions from the relevant courts.

We do however remain of the opinion that notwithstanding the need to confirm COMI that co-operation should be reached with the US Receiver and we continue our efforts to achieve the same.

**OTHER MATTERS**

**Staff Redundancies**

All staff based in Montreal, Canada were made redundant on February 23, 2009 as all activities had ceased at this office.

In Antigua, having regard to the ongoing activities of SIB 65 employees were made redundant on April 8, 2009. The Liquidators will continue to assess the ongoing staff requirements and make additional redundancies as required.

**Online Claims Management System**

Given that depositors are located around the world we are developing an online claims management system which will enable you to formally register your claim online.

**IMPORTANT INFORMATION**

At the top of this letter is your personal Claim Identification number that will enable you to access the online claims system, and to register your claim. You will also be able to receive confirmation that your claim has been recorded in the liquidation records.

Your Claim Identification number is personal to you and without it you will be unable to access the claims system. We recommend therefore that you keep your access code in a secure location.

We anticipate the online claims management system will be operational by June 30, 2009. We will post further instructions on www.vantisplc.com/Stanford and details of when the system will be activated.

**Distribution Prospects and Further Reporting**

At this early stage we cannot accurately comment on the amount of monies that will be available for distribution to depositors and other creditors. It is however clear that the assets of SIB are likely to be significantly less than the amounts owing to depositors and other creditors. We shall ensure that depositors are kept informed of progress with asset realisations and provide updates via the claims management system and our website not less than every 90 days from when the system is activated.

Due to the extensive cost in reporting to investors by mail we intend where possible to report further to you either by email (you will need to provide your email address via the online claims management system when operational) and/or by posting updates on www.vantisplc.com/Stanford.

At present if investors wish to contact the Bank they should do via email to: stanfordenquiries@vantisplc.com

Yours faithfully


Nigel Hamilton-Smith & Peter Wastell
**Joint Liquidators**

Page 6 of 6

7