IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § | |
| Plaintiff, | § § | |
| v. | § | Civil Action No. 3:09-CV-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., ET AL., | § § § | |
| Defendants. | § § | |

| | | |
|---|---|---|
| In re: | § § | |
| STANFORD INTERNATIONAL BANK, LTD., | § | Civil Action No. 3:09-CV-0721-N |
| Debtor in a Foreign Proceeding. | § § | |

EXAMINER'S REPLY IN SUPPORT OF AMENDED JOINT MOTION OF THE SEC,
RECEIVER, EXAMINER, AND OFFICIAL STANFORD INVESTORS COMMITTEE
TO APPROVE SETTLEMENT AGREEMENT AND CROSS-BORDER PROTOCOL

John J. Little, Court-appointed Examiner, respectfully submits this Reply in support of
the Amended Joint Motion of the SEC, Receiver, Examiner and Official Stanford Investors
Committee to Approve Settlement Agreement and Cross-Border Protocol. Doc. No. 1791.[1]

1.      In its Order appointing the Examiner, the Court directed the Examiner to "convey
to the Court such information as the Examiner, in his sole discretion, shall determine would be
helpful to the Court in considering the interests of the [I]nvestors." Doc. No. 322 at 1. The

---

[1]      Unless otherwise noted, Docket references are to materials on file in Civil Action No. 09-298.

EXAMINER'S REPLY IN SUPPORT OF
AMENDED JOINT MOTION TO APPROVE SETTLEMENT                    PAGE 1

Court authorized the Examiner to file Reports and Recommendations as he saw fit, and to file a brief with respect to any motion filed in these actions. *Id.* at 2.

2.     The Examiner is mindful of the admonition in the Court's Order appointing him that he should avoid, to the greatest extent possible, duplicating the efforts of the Receiver. Doc. No. 322 at 3. Accordingly, the Examiner does not intend in this brief to revisit the arguments that have already been made by the settling parties in their Amended Joint Motion to Approve the settlement agreement and cross-border protocol, nor will he reiterate the arguments advanced by the Receiver in his Reply in support of the Amended Joint Motion. Doc. Nos. 1825, 1826.

3.     The Examiner files this Reply to address two issues pertinent the Amended Joint Motion. The first is to report to the Court concerning the extent to which Stanford Investors have expressed their views to the Examiner concerning the proposed settlement agreement. The second is to suggest to the Court that most of the objections that have been made concerning the proposed settlement agreement are both premature and better addressed in other proceedings or in determining other motions.

### A.     Investor Communications with the Examiner Concerning the Agreement

4.     The Receiver, the Joint Liquidators, the Examiner and the OSIC all were well aware of the need to provide information to Stanford Investors concerning the proposed settlement and to offer those Investors an opportunity to be heard concerning the proposed settlement. To that end, the settling parties made a number of efforts to provide information concerning the proposed settlement to Stanford Investors.

### 1.     Efforts to Inform Stanford Investors

5.     The first public announcement made by the Receiver, the Joint Liquidators and the Examiner concerning the proposed settlement agreement was issued on or about December 5,

2012. In that announcement, the Receiver, the Joint Liquidators and the Examiner indicated that an agreement had been reached in principle and that the parties were working to negotiate and draft definitive settlement agreements. This public statement was made available by the Receiver, the Joint Liquidators and the Examiner on their respective websites.[2] A true and correct copy of this announcement is included in the Appendix in Support of this Reply ("Appendix") at 5.

6. The next public announcement concerning the proposed settlement agreement was made jointly by the Receiver and the Joint Liquidators on March 12, 2013.[3] That announcement summarized the terms of the proposed settlement agreement, outlined the various court approvals that were required in order to finalize the settlement agreement, and provided a set of "frequently asked questions" concerning the proposed settlement agreement. True and correct copies of both the press release announcing the formal settlement and the frequently asked questions concerning the settlement are found in the Appendix at 7-8 (Press Release, English); 9-10 (Press Release, Spanish); 12-14 (Frequently Asked Questions, English); and 15-17 (Frequently Asked Questions, Spanish).

---

[2]      See http://www.stanfordfinancialreceivership.com/#JointLiquidatorsStatement (Receiver's website); http://www.sibliquidation.com/homepage/joint-settlement-statement-11302012/ (Joint Liquidators website). The Examiner has deleted the December 5, 2012 release from his website and replaced it with more current information concerning the proposed settlement with the Joint Liquidators. http://www.lpf-law.com/sub/stanford.jsp.

[3]      On March 12, 2013, the Receiver and the Examiner each posted the following materials on their respective websites: (a) a press release summarizing the settlement; (b) a set of Frequently Asked Questions concerning the proposed settlement; (c) the Joint Motion to Approve the Settlement (Doc. 1793); and (d) the Appendix in support of that Motion, which contained a copy of the Settlement Agreement and Cross-Border Protocol (Doc. 1792).

**EXAMINER'S REPLY IN SUPPORT OF**
**AMENDED JOINT MOTION TO APPROVE SETTLEMENT**                    **PAGE 3**

7.     The Receiver, Joint Liquidators and Examiner each encouraged Stanford Investors to make their views known concerning the proposed settlement agreement.   For example, the "frequently asked questions" contained the following invitation:

> The Receiver, the Joint Liquidators, the Examiner, and the Official Stanford Investors Committee each invite Stanford creditors to contact them and express their views, whether favorable or unfavorable, concerning the settlement agreement. Creditors are also encouraged to file any objections to the settlement agreement with the courts in the United States and Antigua and to attend the hearings regarding approval of the settlement agreement.

Appendix at 13-14 (English); 17 (Spanish).

8.     A few days later, on March 19, 2013, the Receiver and the Examiner each posted information to their websites concerning the Court's Order setting a hearing on the Amended Motion to Approve and establishing deadlines for the filing of objections.  See Doc. No. 1801. The Joint Liquidators similarly posted information on their website concerning both the hearing set in this Court for April 11, 2013 and the hearing set in the Antiguan Court for April 8, 2013 concerning approval of the proposed settlement.

## 2.     Investor Response to the Proposed Settlement

9.     During the period from December 5, 2012, when the proposed settlement agreement was first announced publicly, through the filing of this Reply, the Examiner has received surprisingly few comments from Stanford Investors concerning the proposed settlement agreement.  Like the Receiver, the Examiner received a letter signed by 84 individual investors expressing support for the proposed agreement and its prompt approval. *See* Doc. 1826 at 12-14. The Examiner also notes the statement filed in support of the proposed agreement on behalf of a group of 2,300 Stanford Investors holding approximately 10% of the total outstanding Investor claims.  Doc. 1820.

10.    Beyond those materials, the Examiner has received very few Investor responses (positive or negative) to the proposed agreement.  The ones that he has received are addressed below.

a.    The Examiner has received emails from five (5) Stanford Investors expressing support for the proposed settlement agreement and concerns over the perception that the proposed agreement was opposed by the OSIC.  Those concerns appear to be the product of misinformation that was circulating among the Stanford Investor community.  As the Amended Joint Motion makes clear, the OSIC ultimately approved the proposed settlement agreement, executed that agreement, and joined in the Amended Joint Motion seeking this Court's approval.

b.    The Examiner received an email from one Stanford Investor a few days prior to the March 12, 2013 announcement of the final proposed settlement agreement. That email also appeared to be motivated, in large part, by misinformation; it questioned how the Examiner could support an agreement that "does not enjoy the support of the Official Investors Committee and the Department of Justice."  The Examiner responded to that email to inform the Investor that the proposed agreement was supported by both the OSIC and DOJ.

c.    The Examiner received an email from another Stanford Investor a few days after the March 12, 2013 announcement of the formal settlement agreement.  That email expressed two concerns.  The first objected to the agreement to allocate certain funds to the Joint Liquidators.  The second expressed concern regarding how the proposed agreement might impact Investor claims under the Securities Investor Protection Act ("SIPA").  The Examiner responded to the Investor's email and offered

the following explanation concerning the agreement to provide funds to the Joint

Liquidators:

> The settlement agreement provides for the Joint Liquidators to
> receive an amount up to $36 million (spaced over a period of time) to fund
> the operations of the Antiguan Estate. One of the reasons a settlement was
> negotiated was that the Joint Liquidators had made a claim for all of the
> money -- $80 million -- that was frozen in the United Kingdom. That
> claim was defended by the DOJ and its British counterpart [SFO], but
> there was considerable risk that the Joint Liquidators would prevail, in
> which case they would (a) receive the entire $80 million and (b) have no
> constraints concerning how it was used or for what purposes. Given that
> possibility, allocating less than half of the UK money to the Joint
> Liquidators, while ensuring that the remaining UK funds got distributed to
> investors, is a reasonable compromise.

With respect to the Investor's concerns about possible SIPA claims, the Examiner

explained the current status of the appeal that is pending in the Court of Appeals for the

District of Columbia Circuit in the SEC's lawsuit against SIPC. The Investor wrote back

to the Examiner, thanked him for his response, and said that he felt "better about the

agreement reached after reading your responses."

      d.    The Examiner received copies of emails from the Coalicion Victimas de

Stanford America Latina ("COVISAL") and the Stanford International Victims Group

("SIVG").[4] The email from COVISAL, dated December 11, 2012, addressed the settling

parties' December 2012 agreement in principle and urged the Receiver and the Joint

Liquidators to sign a "Cooperation Protocol." The email from SIVG, dated March 13,

2013, did not directly address the proposed settlement agreement but demanded that all

available funds be immediately distributed. Copies of both emails are in the Appendix at

19-22 (COVISAL); 24-26 (SIVG).

---

[4]    Both emails were also sent to at least the Receiver, the Joint Liquidators, the OSIC, and DOJ.

**EXAMINER'S REPLY IN SUPPORT OF**
**AMENDED JOINT MOTION TO APPROVE SETTLEMENT**        **PAGE 6**

11.   The only other Investor response known to the Examiner is a letter that apparently was sent to the Court by Ms. Angela Shaw Kogutt, the Director of the Stanford Victims Coalition ("SVC") and a former member of the OSIC.[5]   Ms. Kogutt's letter objects to two provisions of the proposed settlement agreement:  section 8.2 (which allocates certain funds in the UK to the Joint Liquidators for working capital) and section 9.1 (which addresses this Court's Chapter 15 Order).  Appendix at 28-30.  As the Examiner explained to another Stanford Investor, the agreement to allocate up to $36 million from the UK funds to the Joint Liquidators as "working capital" was and is a reasonable compromise of the litigation pending in the UK, where the Joint Liquidators sought the release of $80 million, the litigation pending in Canada (where the Receiver seeks the release of approximately $23 million) and the litigation pending in Switzerland (where various Swiss authorities must address competing claims to approximately $208 million).[6]

## B.   Other Objections are Premature or Misplaced

12.   The Receiver has already addressed in detail the objections to the settlement filed by certain banks and law firms that rely upon the supposed threat of "duplicative litigation": Greenberg Traurig, LLP, Doc. No. 1805; Proskauer Rose, LLP, Doc. No. 1814; Trustmark National Bank, Doc. No. 1815; Chadbourne & Parke, LLP, Doc. No. 1816; Hunton & Williams, LLP, Doc. No. 1817; and Thomas V. Sjoblom, Doc. No. 1819.  The Receiver has also addressed the objection made by the Curtis Mallet-Prevost, Colt & Mosle, LLP ("Curtis"), which asserts a claim for payment of legal fees owed to it.  Doc. No. 1813.

---

[5]      Ms. Kogutt did not provide the Examiner with a copy of her letter.

[6]      The Receiver has already addressed the argument that the proposed settlement agreement somehow violates this Court's Chapter 15 Order.  See Doc. No. 1825 at 9-13.  The Examiner will not reiterate those arguments here.

**EXAMINER'S REPLY IN SUPPORT OF
AMENDED JOINT MOTION TO APPROVE SETTLEMENT**                    **PAGE 7**

13.     The Examiner will not revisit the Receiver's response to these objections, but notes that all of the objections seem premature, misplaced, or both.

14.     For example, the objections that focus upon the fear of "duplicative litigation" seem both premature and misplaced.   None of the six objectors that focus upon the fear of "duplicative litigation" are currently the subject of any such litigation.   The Joint Liquidators have not sued any of those objectors, nor have they sought discovery from any of them.   Until supposedly duplicative litigation is filed, or duplicative discovery is sought, there is no reason to address how this Court (or some other court) might deal with such duplication.[7]

15.     If and when supposedly duplicative litigation is filed, or supposedly duplicative discovery is sought, the party that is the target of such litigation (or discovery) can seek relief either in this Court or in the court where a later-filed action is then pending.   Nothing in the proposed settlement agreement restricts this Court's (or another court's) ability to fashion appropriate relief if and when such relief is then warranted.[8]

16.     The objection made by Curtis is similarly misplaced.   The Curtis objection is a simple one – it wants to have its claim for unpaid legal fees paid before Stanford Investors receive any distributions, or at least concurrently with such distributions.   Curtis has already made that argument in opposition to the Receiver's motion to approve an interim distribution, *see* Doc. No. 1769, and it is in that context that the Curtis motion should be (and presumably will

---

[7]     Notably, Toronto Dominion Bank is the only party that is currently being sued in this Court and in Canada. Toronto Dominion has not objected to the proposed settlement agreement, but has sought to reserve its rights to address issues when and if they occur in those two proceedings. *See* Appendix at 32.

[8]     Greenberg Traurig, LLP, has already sought relief with respect to its supposed "fear" of duplicative litigation in the lawsuit where it is a party Defendant. See Civil Action No. 12-4641, Doc. Nos. 27 (motion to dismiss); 29 (supporting brief); 30 (motion to join Joint Liquidators); and 31 (counterclaim and third party action). It is worth noting that Greenberg Traurig, LLP filed its motions and effort to join the Joint Liquidators several weeks before the proposed settlement agreement was announced.

**EXAMINER'S REPLY IN SUPPORT OF**
**AMENDED JOINT MOTION TO APPROVE SETTLEMENT**                    **PAGE 8**

be) resolved.[9]  For the reasons set forth in the Receiver's reply, Doc. No. 1825 at 23, Curtis would have no opportunity to participate in a distribution of the frozen funds in the absence of a settlement.  Accordingly, it should not be heard to complain about the proposed settlement.

### C.   Conclusion

17.   The proposed settlement agreement that is before the Court is the product of meetings, discussions, and negotiations that stretched over almost a full year and involved six different parties (the Receiver, the Examiner, the OSIC, the Joint Liquidators, the SEC and DOJ).  It resolves pending disputes in four different jurisdictions (the US, UK, Switzerland and Canada) and paves the way for the distribution of the substantial majority of $300 million to Stanford victims.

18.   Since the first public announcement of an agreement in principle, the Examiner has received very little in the way of Investor comment concerning the proposed agreement, despite having expressly invited comment.  The Examiner believes that the lack of Investor response is an indication that Investors generally support what the proposed agreement seeks to accomplish; specifically:

a.    the distribution of the funds frozen in the UK, Switzerland and Canada to Stanford's Investor-victims; and

b.    the end of time-consuming and expensive hostilities between the Receiver and the Joint Liquidators.

---

[9]    Curtis is not the only alleged creditor that objected to the Receiver's distribution motion, nor is it the only alleged creditor that seeks to be paid before the Stanford Investors.  See Doc. Nos. 1767 (INX Response to Distribution Motion); 1770 and 1771 (Trustmark Objection to Distribution Motion).  Curtis is the only alleged creditor to object to the proposed settlement on the basis that it wants to be paid first.

**EXAMINER'S REPLY IN SUPPORT OF**
**AMENDED JOINT MOTION TO APPROVE SETTLEMENT**                    **PAGE 9**

19.    For the foregoing reasons, as well as those expressed in the settling parties' Amended Joint Motion and in the Receiver's Reply Brief, the Examiner urges the Court to approve the proposed settlement agreement without delay.

April 8, 2013

Respectfully submitted,

_____/s/ John J. Little_____
John J. Little
Tex. Bar No. 12424230

LITTLE PEDERSEN FANKHAUSER, LLP
901 Main Street, Suite 4110
Dallas, Texas 75202
(214) 573-2300
(214) 573-2323 [FAX]

## CERTIFICATE OF SERVICE

On April 8, 2013, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ John J. Little